IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

TRIANGLE CAYMAN ASSET
COMPANY 2, LLC,

Plaintiff,

v.

C&C ELLEGANZA, INC.;
PARAISO TERRENAL, INC.;
CARLOS I. CUMBAS ORTIZ,
EDNA N. PEÑA TORRES AND
THE CUMBAS-PEÑA LEGAL
CONJUGAL PARTNERSHIP. ,

Defendants.

CIV. NO.: 16-1786 (ADC)

## REPORT AND RECOMMENDATION

This is an action for collection of money and foreclosure of
the collateral guaranteeing the obligations of defendants with
Triangle Cayman Asset Company 2, LLC, ("Triangle
Cayman"), successor in interest of the now-defunct
Westernbank Puerto Rico. According to the Complaint, these
obligations arise under two loan agreements that defendants

signed with Westernbank. Approximately two months after serving defendants, and before the court-mandated deadline to answer the complaint had elapsed, plaintiff moved for an *ex parte* order for the pre-judgment attachment of a property located in Urbanización Puerto Nuevo, Río Piedras, Puerto Rico. Docket No. 22. The presiding judge referred the matter to a magistrate for a hearing, with the following specific instructions: verify the accuracy of the amounts claimed; the need for an ex-parte proceeding; and recommendation of a reasonable bond amount, if any. Docket No. 27. In the interim, plaintiff filed a motion for default entry because defendants failed to answer the complaint, despite multiple extensions. The complaint remains unanswered to this day.

The hearing on the motion for writ of attachment was held on January 26, 2017. Docket No. 37.  Both plaintiff and defendants appeared and were heard, thereby turning moot the issue of whether the proceeding should be conducted *ex parte*. I will now discuss the remaining matters, in turn.

### I. Accuracy of amounts claimed

According to plaintiff, as of August 18, 2016, defendants owed $1,931,566.85 under Loan Agreement I and $508,459.80 under Loan Agreement II, for a total of $2,440,026.64. *See*

Statement under Penalty of Perjury, Docket No. 22-1. When the court inquired whether those amounts were accurate, plaintiff responded in the affirmative. Though plaintiff made a witness available to testify as to the accuracy of the amounts disclosed, the court gave credence to the information contained in the Statement under Penalty of Perjury signed by Eduardo Vivoni Umpierre, Vice President of Capital Crossing of Puerto Rico, LLC.[1] *Id.*

Defendants disputed these amounts and argued that they had documentation that would establish their inaccuracy, but were not ready to present it at the hearing. The court granted three working days to produce the evidence, at the conclusion of which defendants submitted a motion in opposition with several attachments. Docket No. 38. Defendants aver that they made several payments in accordance with a Stipulation signed with Banco Popular de Puerto Rico ("BPPR")[2] in the

---

**1.** Although Capital Crossing of Puerto Rico is not the plaintiff and nothing in the pleadings explains the relationship of Capital Crossing with Triangle Cayman, Mr. Vivoni indicated that he had personal knowledge of Triangle Cayman's business records, as part of his work-related endeavors.

**2.** The motion states that BPPR substituted Westernbank in the bankruptcy case.

context of a bankruptcy proceeding. Those payments allegedly lowered the total outstanding debt owed to BPPR on account of the credit facilities that were later purchased by Triangle Cayman. Defendants also included an email dated May 22, 2014, from Mr. Carlos J. Morales Lugo, an officer of BPPR. Docket No. 38-3. In the email, Morales-Lugo mentioned that the balance of the debt "at the end of year 2013 was $1,599,044.39." The last piece of evidence proffered is a summary of all the payments allegedly made by defendants. Docket No. 38-4. According to the motion, the document was "prepared by defendant," though it does not specify which of the five named defendants it is referring to. Also, the chart is not signed.

According to defendants', they owe no more than $1,826,617.93, including interests and penalty fees. Docket No. 38 at page 5. Plaintiff, in turn, filed a motion addressing defendants' claims. Docket No. 40. Upon reviewing the evidence, the court makes the following findings.

The Stipulation that the parties agreed upon in the bankruptcy case indicates that C&C Elleganza, Inc. (C&C), acknowledged and accepted that it owed these amounts: $352.27 for secured claim No. 1, $1,695,623.98 for claim No. 2,

and $404,634.17 for claim No. 4. Docket No. 1-18. The property located at Urbanización Puerto Nuevo guaranteed the amounts owed in the three claims described above. *Id*. Pursuant to the Stipulation, with regard to claim No. 2, C&C was required to make monthly payments of $8,100.00 of principal, with interests at the rate of 4.25% per annum for a period of 12 months. After those 12 months had elapsed, C&C had to make monthly payments of $9,100.00 of principal, with interest at a 4.25% rate. *Id*. C&C also acknowledged that the interest accrued as of June 21, 2010 added up to $352,418.13. *Id*.

C&C made several payments, though it missed some months. Docket No. 38-4. The last payment reflected, if we take defendants' evidence at face value, was on February 28, 2014. Docket No. 38-4. From that point up until February 18, 2015, when BPPR sent a letter to C&C through its lawyers, Docket No. 1-20, defendants admittedly made no payments towards the debt. As stated in that letter, C&C had failed the last 15 monthly payments, totaling $136,500.00, plus interests, fees, and charges. Docket No. 1-20. That letter was sent approximately two years ago, meaning that, as of this date, C&C has not made payments on the loan for almost three years. Defendants' chart does not take into account those

missed payments and fails to properly refute plaintiff's ample documentation, much of it under penalty of perjury.

Therefore, I recommend that the court find that there is no properly supported dispute as to the amounts owed to plaintiff, which total $2,440,026.

**II. Need for a bond and reasonable amount**

Plaintiff has briefed the court on the legal framework upon which his request rests, particularly Fed. R. Civ. P. 64 and Puerto Rico Rules of Civil Procedure 56.3 and 56.4.[3] Pursuant to Rule 56.3(1), a party moving for attachment is exempt from posting a bond when the obligation "may be legally enforced", as evidenced by a "public or private document...signed before a person authorized by law to administer oaths." *See* PR ST T. 32 Ap. III, § 56.3(1).

Plaintiff avers that no bond is needed because defendants' debt is legally enforceable and arises from documents subscribed before a notary public, thereby complying with Rule 56.3(1)'s requisites. We find that it appears from the documents submitted with the complaint that the debt is due and payable. Therefore, we recommend that no bond be required.

---

**3.**   Laws of P.R. Ann., Tit. 32, Ap. V, R. 56.3 and 56.4.

IT IS SO RECOMMENDED.

The parties have fourteen days to file any objections to this report and recommendation. Failure to file the same within the specified time waives the right to appeal this report and recommendation. *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150-51 (1st Cir. 1994); *United States v. Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986).

In San Juan, Puerto Rico, this 17th day of February 2017.

S/ SILVIA CARREÑO-COLL

UNITED STATES MAGISTRATE JUDGE